## Peoria & Pekin Terminal Railway v. Michael Schantz.

1. VERDICT—*when not disturbed.* A verdict will not be set aside on review where the evidence fairly supports the same.

Action in case for personal injuries. Appeal from the Circuit Court of Tazewell county; the Hon. THEODORE N. GREEN, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

JACK, IRWIN, JACK & DANFORTH and H. C. FRINGS, for appellant.

CHARLES SCHAEFER and W. B. COONEY, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

This is an appeal from a judgment against the Peoria & Pekin Terminal Railway for $2,500, recovered by Michael Schantz, as damages for a personal injury.

The negligence alleged in the declaration upon which the recovery is based, is the failure of appellant to keep in repair an iron step in a ladder on the side of its car, whereby appellee in attempting to descend to the ground by means of the ladder, fell and was injured.

On December 23, 1903, appellee, a "hostler" in the employ of appellant, was directed to accompany its engineer Stout, with an engine and empty dump car, from South Bartonville to the German mines, located on the line of appellant's road about two and one-half or three miles south of South Bartonville. At the German mines appellant has a coal chute above its track, and also a switch track west of its main track. The coal chute is supported by eight by eight upright timbers which stand so close to the switch track that there is but an eight-inch space between the timbers and the side of an ordinary coal car.

There is evidence tending to show that when the

engine and car reached a point south of the mine, so that they could be run on the switch track, appellee obtained the switch key from the engineer and unlocked and opened the switch; that the engine then backed on the switch track pushing the empty car ahead of it to a point north of the coal chute for the purpose of coupling on two coal cars standing there on the switch track; that appellee coupled the empty dump car to the two coal cars, and as the engineer started to move the cars forward he whistled the signal for "breaks off;" that appellee then climbed up the ladder on the south end of the coal car nearest the empty dump car and released the brake, which was set; that he then went to the next car north, found the brake off, and then started to get off that car by means of the iron steps on the side; that the cars had then commenced to move south, and the car which appellee was attempting to get out of was sixteen or seventeen feet from the timbers supporting the coal chute; that while getting off the car appellee faced the car and had his back to the main track; that there were four or five iron steps on the side of the car; that as appellee put his foot down to take the fourth step his foot slipped or failed to rest on the step by reason of the iron rod which formed the step having been bent in toward the side of the car; that appellee thus losing his footing hung by his hands; that as the car was moving south toward the coal chute, the supporting timbers of which were too close to the car to permit appellee to remain on the side of the car, he dropped to the ground and his foot was thrown under the wheel.

When the engine and empty dump car left South Bartonville copies of a train order signed with the initials of the general manager of appellant were delivered to the engineer, Stout, and to appellee, which order was as follows: "Eng. 4 will run extra South Bartonville to German mine and return extra to South Bartonville, but will protect against

I. V. B. extra 6 south in these limits." The evidence tends to show that a short distance north of the switch at the mine there is a curve in the main track of appellant which obstructs the view to the north from that point of a south-bound train on the main track, and appellee testifies that he got off the car for the purpose of going north on the main track to a point where he could see and signal the train designated in the train order as "I. V. B. extra 6" as directed in the order.

At the close of appellee's evidence, and again at the close of all the evidence, appellant moved the court to give to the jury peremptory instructions, which motions were denied and the instructions refused.

If the injury complained of by appellee had resulted from his being struck by the supporting timbers of the coal chute while he was riding on the side of the car, there could be no recovery in this case. Appellee had frequently been engaged in switching cars on the switch track at the mine and was fully conversant with the situation. He had actual knowledge of the proximity of such timbers to the side of a car on the track and knew and appreciated the danger incident to that condition. It was his knowledge of this condition and of the danger incident to it, that prompted him to act quickly in descending from the car and in dropping to the ground before he reached the timbers.

It is not seriously controverted by appellant that the step on the car was defective, and that appellee sustained his injury in the manner described by him, but it is insisted that the defect was an obvious defect of which appellee had knowledge, or might have had knowledge, by the exercise of reasonable care, and that there is no evidence in the record that appellant had knowledge of the defect, or that the defect had existed for such length of time as to charge appellant with knowledge of it. Appellee testifies

144    APPELLATE COURTS OF ILLINOIS.

VOL. 130.]    Peoria & Pekin Term. Ry. v. Schantz.

that he had no knowledge of the defect in the step, and there is no contradictory evidence in the record. Whether or not he might have acquired such knowledge by the exercise of ordinary care was a question of fact for the jury, and we are content to abide the verdict upon that issue. Appellee's duty, as he conceived it, demanded quick action on his part. In the absence of knowledge to the contrary he had a right to rely upon the performance by appellant of its duty to exercise reasonable care to provide a reasonably safe ladder to enable him to descend from the car. He was attempting to descend from the car by the use of the ladder in the usual and customary manner, and we do not think that reasonable care for his safety imposed upon him the imperative duty to pause before making the attempt and satisfy himself that the steps of the ladder were in proper condition for use.

Counsel for appellant are in error in asserting that there is no evidence in the record tending to show that the defect in the step had existed for such length of time as to charge appellant, in the exercise of reasonable care, with notice of such defect. The witness John Radcliffe, an engineer in the employ of the German Company, testified on cross-examination, as follows:

"Q. Can you state what end of the car it (the defective step) was on? A. No, sir, I had seen the same step many times before.

Q. Anybody working with the car would see the same step, would they not? A. Yes, sir.

Q. It was plainly visible, was it? A. If one was standing on the ground, yes, sir; standing on the ground a man naturally would see the step.

Q. Was the whole step crushed in in this way, or was it merely in the center? A. You might say it was from one end to the other; it had just been mashed right in.

Q. You say it had been that way for some time? A. I had seen it several times on that car."

The instructions given by the court, taken as a series, state the law applicable to the case with substantial accuracy, and as the evidence in the record fairly supports the verdict, the judgment will be affirmed.

*Affirmed.*